Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, Florida 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD G NEWMAN JR., individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>AECIQ, a California corporation,<br><br>*Defendant.* | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## **CLASS ACTION COMPLAINT**

Plaintiff Edward G Newman Jr. ("Plaintiff Newman" or "Newman") brings this Class Action Complaint and Demand for Jury Trial against Defendant AECIQ ("Defendant" or "AECIQ") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded calls without consent to cellular telephone numbers. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Newman, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and

experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Edward G Newman Jr. is a resident of Willow Park, Texas.

2. Defendant AECIQ is a California registered corporation that is headquartered in Auburn, California.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and makes calls from out of this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's

2

representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.0 billion robocalls were placed in February 2024 alone, at a rate of 137.2 million per day. www.robocallindex.com (last visited March 17, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant AECIQ is a technology platform that connects architecture, engineering and construction companies with prospective employees.[3]

14. Defendant AECIQ's employees place cold calls to generate business for its commercial real estate services.

15. As part of that cold calling, Defendant AECIQ's employees leave pre-recorded telemarketing voicemails to consumers.

16. Defendant's employees do not obtain the appropriate consent before placing pre-recorded solicitation calls to cell phone numbers like the Plaintiff's number in this case.

17. Defendant's pre-recorded voicemails are solicitations.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.aeciq.com/

4

18. AECIQ states that there are no hiring fees on its website[4] and in its voicemails, but it does charge up-front fees to its clients, as well as potentially other fees as well:



19. On Robokiller.com, 850 people reported calls that they received from AECIQ, from 530-450-3590 which is the same number the Defendant used to call Plaintiff's cell phone number:

---

[4] Id.
[5] https://www.aeciq.com/#https://app.aeciq.com/new/talent-pipeline



[6]

20. In response to these calls, Plaintiff Newman brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

**PLAINTIFF NEWMAN'S ALLEGATIONS**

21. Plaintiff Newman is the sole owner and user of his cell phone number ending in 7363.

22. On March 12, 2024 at 1:26 PM, Plaintiff Newman received an unsolicited call to his cell phone from AECIQ, from 530-450-3590.

23. This call was not answered, but a pre-recorded voicemail was left stating:

---

[6] https://lookup.robokiller.com/p/530-450-3590

"Hi, my name is Shaun Leeper. I am a principal of AECIQ. And what AECIQ is, is we are a technology enabled talent acquisition platform that's a 100% exclusive to the architecture, engineering, and construction industry. And we also do not ever charge our clients placement fees. So our software that we utilize is proprietary to us. You know, we created it ourselves and it scans thousands of different data channels online to ensure that these candidates actually meet the criteria that they are saying that they meet. So we're not just relying on updated Linkedin profiles or anything like that. Our software is actually able to uncover that these individuals do meet that criteria based on the alumni boards, licensing boards, things of that nature. So, we really value ourselves being able to make you fully aware of your total addressable talent pool, also of course the fact that we don't ever charge our clients placement fees kind of sets us apart from a traditional recruiter or headhunter and also just the fact that we are exclusive to the AEC industry we're going to have a lot deeper knowledge of the niche positions that kind of exist within the industry. So really what I'm just looking to do is set you up with my associate principal. Have a quick 15 minute conversation with him. Allow him to ask you some questions about your current usage for your talent acquisitions and things like that. And then of course have you ask him any questions you may have as well and just see if maybe it might be worth exploring that relationship a little bit further. The number that you can call or text me back on, really whatever is easier for you just to let me know your availability if you have any interest in getting that scheduled. The number you can reach me on is 530-450-3590 and again this is Shaun with AECIQ. Thank you so much for your time. I look forward to hopefully hearing back from you soon and hope you're having a great day so far."[7]

24. On March 14, 2024 at 2:21 PM, Plaintiff Newman received a 2nd unsolicited call to his cell phone from AEQIQ, from 530-450-3590.

25. This call was not answered, but a pre-recorded voicemail was left stating:

"Hi, my name is Shaun Leeper. I am a principal of AECIQ. And what AECIQ is, is we are a technology enabled talent acquisition platform that's a 100%

---

[7] https://www.dropbox.com/scl/fi/xelyq3ofws2x18eethp4q/voicemail-1260.m4a?rlkey=1ivzv19y76bj4ipuudsw52ppw&dl=0

7

exclusive to the architecture, engineering, and construction industry. And we also do not ever charge our clients placement fees. So our software that we utilize is proprietary to us. You know, we created it ourselves and it scans thousands of different data channels online to ensure that these candidates actually meet the criteria that they are saying that they meet. So we're not just relying on updated Linkedin profiles or anything like that. Our software is actually able to uncover that these individuals do meet that criteria based on the alumni boards, licensing boards, things of that nature. So, we really value ourselves being able to make you fully aware of your total addressable talent pool, also of course the fact that we don't ever charge our clients placement fees kind of sets us apart from a traditional recruiter or headhunter and also just the fact that we are exclusive to the AEC industry we're going to have a lot deeper knowledge of the niche positions that kind of exist within the industry. So really what I'm just looking to do is set you up with my associate principal. Have a quick 15 minute conversation with him. Allow him to ask you some questions about your current usage for your talent acquisitions and things like that. And then of course have you ask him any questions you may have as well and just see if maybe it might be worth exploring that relationship a little bit further. The number that you can call or text me back on, really whatever is easier for you just to let me know your availability if you have any interest in getting that scheduled. The number you can reach me on is 530-450-3590 and again this is Shaun with AECIQ. Thank you so much for your time. I look forward to hopefully hearing back from you soon and hope you're having a great day so far."[8]

26. Plaintiff Newman believes the voicemails were pre-recorded because both voicemails are identical in the words and length, featuring the same person, the same pauses, intonation and an identical script.

27. The phone number 530-450-3590 which called the Plaintiff is owned/operated by Shaun Leeper, a principal at AECIQ:

---

[8] https://www.dropbox.com/scl/fi/k987wu4r5djx7x3l67ivj/voicemail-1263.m4a?rlkey=frj24dzjp8z15hg10f3r7fp4t&dl=0

8



[9]

[10]

28. Plaintiff never provided consent for Defendant AECIQ to place pre-recorded calls to his cell phone number.

29. Prior to receiving the pre-recorded voicemails, Plaintiff Newman has never even heard of AECIQ.

30. The unauthorized telephone calls that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Newman in the form of annoyance, nuisance, and invasion of privacy, occupied his phone memory, and disturbed the use and enjoyment of his phone.

31. Seeking redress for these injuries, Plaintiff Newman, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

---

[9] https://www.linkedin.com/in/shaunleeper/
[10] https://kidder.com/professionals/williams-francisco/

## CLASS ALLEGATIONS

32. Plaintiff Newman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

33. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Newman anticipates the need to amend the Class definitions following appropriate discovery.

34. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

10

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff Newman will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Newman has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Newman and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff Newman nor his counsel have any interest adverse to the Class.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Newman. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Newman and the Pre-recorded No Consent Class)**

38. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

12

39. Defendant transmitted unwanted telephone calls to Plaintiff Newman and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

40. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

41. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all pre-recorded calling activity that is done without proper consent, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Newman requests a jury trial.

**EDWARD G NEWMAN JR.**, individually and on behalf of all others similarly situated,

DATED this 26th day of April, 2024.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*